UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Susan Mead,                        :
        Plaintiff,                 :
                                   :
        v.                         :   No. 2:05-CV-332
                                   :
ReliaStar Life Insurance Company:
        Defendant                  :

## MAGISTRATE JUDGE'S REPORT & RECOMMENDATION
(Papers 20 & 24)

Susan Mead has filed this action pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), against ReliaStar Life Insurance Company ("ReliaStar"), challenging the denial of long term disability ("LTD") benefits.  Mead seeks a declaration that she is entitled to long-term disability benefits and seeks to recover past due benefits from July 28, 2003, plus pre-judgment and post-judgment interest and attorney's fees. She also seeks equitable relief in the form of reinstatement of LTD insurance benefits.  ReliaStar contends that Mead is ineligible for benefits and that the denial of benefits should be affirmed.  The case is currently before the Court on the parties' cross-motions for summary judgment. (Papers 20 & 24).

For the following reasons, I recommend that the case be

remanded to the plan administrator.

BACKGROUND

The following facts are undisputed unless otherwise
noted.

I. Employment

Mead worked for ReliaStar until December of 2000.
(Paper 37, 1-2).  Mead's job was executive in nature;
however, the parties dispute Mead's job title while at
ReliaStar, as well as the tasks and requirements of her
position.  (Paper 23, ¶¶ 1, 7-8);(Paper 39, ¶¶ 1, 7-8).

As an executive, Mead was employed pursuant to a
Management Employment Agreement ("MEA").  (Paper 23, ¶ 1).
The MEA provided compensation to Mead if she was terminated
due to a change in control event. (Id. at ¶ 2).  In 2000,
Dutch financial services conglomerate ING acquired
ReliaStar.  (Paper 23, ¶ 3). After the merger, Mead's
position was eliminated and she declined a new position with
the merged entity. (Paper 37, 1).  Her departure from the
company triggered the provisions of her MEA. (Id.).
Pursuant to the MEA, Mead received a substantial lump sum
payment and an extension of her benefits, including a
continuation of her LTD coverage. (Id.).

## II. Disability Insurance

The plan at issue is entitled ReliaStar Financial Corp.
Welfare Plan, and ReliaStar is listed as the plan
administrator. (Paper 17, 24).  Mead was entitled to LTD
coverage at 40%, paid by ReliaStar for up to three years if
she became disabled.  (Paper 37, 2).  The Claim Procedures
of the policy, located in the Summary Plan Description,
vests ReliaStar with "final discretionary authority to
determine all questions of eligibility and status and to
interpret and construe the terms of this policy(ies) of
insurance." (Id. at 1-2);(Paper 27, 25).  "Total Disability"
is defined as: "until you have qualified for monthly income
benefits for 24 months, you are unable to do the essential
duties of your own occupation, due to sickness or accidental
injury." (Id. at 249).

## III. Medical History

At least as early as 2000 Mead sought treatment for
chronic neck pain.  (Paper 27, 307).  Mead was treated by a
physical therapist and a chiropractor but the pain did not
subside.  (Id.).  Mead consulted with a long series of
doctors about the pain, beginning in January 2001.  (Paper
47, 6-20).  Multiple doctors have diagnosed Mead with

degenerative disc disease, depression, and fibromyalgia.
(Id.).   Mead has tried several treatment options but she
claims the pain remains.  (Id.).

IV.  Mead's Application for Benefits

On January 28, 2003, Mead applied for LTD benefits
under the ReliaStar plan. (Paper 37, 2).  She listed
fibromyalgia and degenerated discs as the causes of her
disability. (Id.).  Although she noticed symptoms in 1988,
Mead stated that her disability began in 1995. (Id.).   On
August 28, 2003, Nancy Wallin, Senior Disability Benefits
Specialist at ING, denied Mead's request for LTD benefits
because she did not meet the plan's definition of total
disability. (Paper 27, 5-6); (Paper 27, 249-54).

Mead appealed her denial to ING's Appeal Committee.
(Paper 37, 15).  On August 13, 2004, ING sent Mead a letter
affirming the denial of disability benefits.  (Paper 39, ¶
49); (Paper 27, 54).

On December 29, 2005, Mead filed her Complaint against
ReliaStar to clarify her LTD benefits pursuant to ERISA.
She seeks a judgment reversing the denial of benefits under
the plan.

<u>Discussion</u>

Summary judgment is granted if no genuine issue of material fact exists, and, based on undisputed facts, the moving party is entitled to judgment as a matter of law. <u>Salahuddin v. Goord</u>, 467 F.3d 263, 272 (2d Cir. 2006)(citing <u>D'Amico v. City of New York</u>, 132 F.3d 145, 149 (2d Cir. 1998)). In deciding whether there is a genuine issue of material fact the Court must resolve all ambiguities and draw all inferences in the light most favorable to the nonmoving party. <u>Id.</u> (citing <u>Ford v. McGinnis</u>, 352 F.3d 582, 287 (2d Cir. 2003)).

I. Applicable Law

Mead first argues that the disability policy in question is a "conversion policy" and therefore is not governed by ERISA but by state law. A conversion policy is a private, non-employer-financed, insurance policy obtained by a former employee, through the exercise of the conversion rights of a group policy. <u>See</u> <u>Demars v. CIGNA Corp.</u>, 173 F.3d 443, 445 n.1 (1st Cir. 1999). The only evidence of Mead's policy being a conversion policy is a ReliaStar internal email stating that "Her [Mead's] based salary remain [sic] the same since the conversion". This statement

is ambiguous and there is no other evidence indicating that the statement was referring to a conversion policy.  There is no evidence of Mead electing to convert to a private policy and all other evidence indicates that she continued coverage under the employer financed group policy. Therefore, the policy is not a conversion policy and ERISA law applies.

II. Applicable Standard of Review

The parties have focused intensely on the issue of which standard of review the Court should apply in reviewing ING's decision to deny Mead disability benefits.  Under ERISA, the default standard of review is de novo.  <u>Firestone Tire & Rubber Co. v. Bruch</u>, 489 U.S. 101, 115 (1989). However, if the plan reserves discretion for the administrator or fiduciary to determine eligibility for benefits or to construe the terms of the plan, the Court is limited to an arbitrary and capricious standard of review. <u>See</u> <u>id.</u>; <u>O'Shea v. First Manhattan Co. Thrift Plan & Trust</u>, 55 F.3d 109, 111-12 (2nd Cir. 1995).  Mead argues that this discretion was never reserved, while ReliaStar argues that it was reserved in the Summary Plan Description which reads: "ReliaStar Life has final discretionary authority to

6

determine all questions of eligibility and status and to
interpret and construe the terms of this policy(ies) of
insurance."

A plan administrator or fiduciary must clearly and
unambiguously reserve discretionary authority to determine
benefits eligibility or to construe the terms of the plan in
order to justify arbitrary and capricious review. Kinstler
v. First Reliance Standard Life Ins. Co., 181 F.3d 243, 251
(2d Cir. 1999) ("When we have deemed the arbitrary and
capricious standard applicable, the policy language
reserving discretion has been clear."); see also Abatie v.
Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir.
2006) ("We have held that, for a plan to alter the standard
of review from the default of de novo to the more lenient
abuse of discretion, the plan must unambiguously provide
discretion to the administrator."). The language of the
Summary Plan Description clearly and unambiguously reserves
for ReliaStar "discretionary authority" to "determine all
questions of eligibility" and to "construe the terms of this
policy". A benefits determination is based on the
claimant's eligibility and the interpretation of the plan's
terms. See Firestone, 489 U.S. at 115 ("[T]he validity of a

claim to benefits under an ERISA plan is likely to turn on the interpretation of terms in the plan at issue."). Therefore, the validity of Mead's claim is determined by interpreting the plan and determining her eligibility, for which ReliaStar unambiguously reserved discretion.  It is unreasonable to interpret discretionary authority to determine "eligibility" and to interpret "term of the policy" as not including benefits eligibility.  Therefore, ReliaStar clearly reserved discretionary authority to decide Mead's benefits claim and arbitrary and capricious review should apply.

Mead further argues that ING, which denied Mead benefits, was not delegated discretionary authority under the plan when ING acquired ReliaStar, because only ReliaStar was granted discretion under the plan.  Mead bases this argument on Rodriguez-Abreu v. Chase Manhattan Bank, N.A., 986 F.2d 580 (1st Cir. 1993).  In Rodriguez-Abreu, a LTD benefits plan granted discretionary authority to the plan fiduciary but not to the plan administrator.  Id. at 584. The plan administrator had made the decision to deny the claimant benefits. Id. at 583-84.  The court held that the proper standard of review was de novo because the plan

8

contained no procedure for delegating authority and there was no expression of intent to delegate the fiduciary's authority to the plan administrator.  Id. at 584.

Rodriguez-Abreu is inapplicable here.  When ING acquired ReliaStar, ReliaStar ceased to be its own entity and became a part of ING.  See PPG Indus., Inc. v. Guardian Indus. Corp., 597 F.2d 1090, 1095-96 (6th Cir. 1979) ("[T]he theory of continuity relates to the fact that [in a merger] there is no dissolution of the constituent corporations and, even though they cease to exist, their essential corporate attributes are vested by operation of law in the surviving or resultant corporation.").  ReliaStar's discretionary rights were acquired along with the entirety of the company. See Halliburton Co. Benefits Comm. v. Graves, 463 F.3d 360, 370-71 (5th Cir. 2006) (holding that in a merger, the surviving corporation reserves the constituent corporation's rights under a welfare benefit plan).  Unlike Rodriguez-Abreu, no express delegation was required here because the same entity that was granted discretionary authority made the final determination.  The Court can find no case that requires discretionary authority to be transferred separately from any other rights of a company being

acquired.   Therefore, the standard of review is unchanged.

Mead finally claims that ReliaStar took too long to render a decision and therefore lost its right to arbitrary and capricious review.  Department of Labor regulations set forth deadlines for the notification of the denial of benefits on appeal.  29 C.F.R. § 2560.503-1(i)(3).  Both parties agree that the regulations require a determination within 90 days and that the appeal period began on April 20, 2004.  The denial of Mead's appeal occurred on August 13, 2004, 115 days after the appeal period began.  However, the regulations also allow for a tolling period due to claimant's failure to submit necessary information.  29 C.F.R. § 2560-503-1(i)(4). On May 10, 2004, the plan administrator requested that Mead forward a copy of her work rehabilitation program records and indicated that the claim would be tolled in the interim.  The records were received twenty-five days later.  Subtracting the tolled 25 days from the 115 days results in compliance with the 90 day requirement.

ING had discretionary authority to make Mead's benefits determination and complied with the regulatory scheme. Therefore, the Court must review the claim under the

10

arbitrary and capricious standard.

III. ING's Decision

A.  Arbitrary and Capricious Standard

Under the arbitrary and capricious standard of review, a denial of benefits may be overturned "only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." Demirovic v. Building Service 32 B-J Pension Fund, 467 F.3d 208, 212 (2d Cir. 2006) (citing Pulvers v. First UNUM Life Ins. Co., 210 F.3d 89, 92 (2d Cir. 2000)). "Where both the trustees of a pension fund and a rejected applicant offer rational, though conflicting, interpretations of plan provisions, the trustees' interpretation must be allowed to control." Miles v. N.Y. State Teamsters Conference Pension & Ret. Fund Employee Pension Ben. Plan, 698 F.2d 593, 601 (2d Cir. 1983).

B.  ING's Basis for Denial

According to ING's denial letter, it based the initial decision to deny benefits on review of records, reports, and letters from numerous doctors as well as information provided by Mead herself.  The opinions of both ING's doctors and Mead's doctors were discussed.  ING concluded

11

that the medical records did not support total disability
from Mead's occupation.  On appeal, ING sent Mead's medical
records to other physicians to evaluate.  The physicians
consulted were also of the opinion that Mead was not totally
disabled.  ING affirmed the denial of benefits, referring in
the denial letter to the same basis as the original denial
as well as the new doctors' opinions.

C.  Mead's Objections

    Mead argues that ING acted arbitrarily and capriciously
because:  (1) the physicians that ING consulted were biased;
(2) ING disregarded the opinions of Mead's examining
physicians and occupational therapists; (3) ING relied on
only the opinion of non-examining physicians; (4) ING did
not review Mead's claim with the correct job description;
(5) ING failed to explain its reasoning behind the denial;
(6) on appeal ING relied on evidence and reasoning to which
Mead was not allowed to respond.

1.  Physician Bias

    Mead claims that Dr. Nudelman, Dr. Johnson, and Dr.
Yarosh are all biased in favor of ING and therefore reliance
on their opinions was arbitrary and capricious.  The
perceived bias arises from the fact that the doctors are all

regular file reviewers for benefits providers.  Dr. Nudelman
practices only as a file reviewer and his company solicits
file review business through advertisement.  Mead claims the
advertisements exhibit bias through stating that Dr.
Nudelman's company, "specializes in adjudicating
recommendations for those 'won't go away claims.'"

    While these facts may exhibit bias, they are not so
strong as to make it unreasonable to find otherwise.  The
mere status of being a file reviewer on its own is not
enough to prove bias.  Dougherty v. Indiana Bell Tele. Co.,
440 F.3d 910, 916 (7th Cir. 2006) ("We presume a plan is
'acting neutrally unless a claimant shows by providing
specific evidence of actual bias that there is a significant
conflict.'").  Potential bias is not enough to dislodge
arbitrary and capricious review.  Id. at 915.  Even in light
of Dr. Nudelman's advertisements, reasonable minds could
differ on actual bias.  Therefore, ING's reliance on the
medical opinion of regular file reviewers was not arbitrary
and capricious.

2.  Mead's Examining Doctors

    Mead claims that ING disregarded Mead's doctors without
cause.  It is not clear from the record that this is the

13

case.  ING did not explicitly reject the opinions of any doctors in its denial letters.  The initial denial letter discussed the findings of all examining doctors and concluded that Mead was not disabled.  The denial on appeal cited the same reasoning.  Only Dr. Rabin gave a direct opinion either way on whether Mead could perform her job when she stated that:  "Ms. Susan Mead is clearly incapable of performing a sedentary job given her multiple areas of pain including neck, shoulder, arms and hands."  While ING must have rejected Dr. Rabin's conclusion, it did not necessarily reject Dr. Rabin's opinion on Mead's abilities and limitations.  It is possible for different conclusions to be reached based on the same medical evidence.  While ING cannot completely disregard the medical opinions of Mead's examining doctors, it is not clear that ING did so.  Black & Decker Disability Plan v. Nord, 538 U.S. 822, 834 (2003) ("Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician.").  Therefore, ING's rejection of Mead's doctors' opinions was not arbitrary and capricious.

3.   Reliance on Non-Examining Physicians

Mead claims that ING acted arbitrarily and capriciously in relying on the opinions of non-examining physicians, Nudelman, Johnson, and Yarosh.  Again, it is not clear that ING relied on these doctors more than Mead's own doctors. All medical opinions were discussed in the denial letters and none of the doctors were explicitly rejected by ING. Regardless, the examining physicians do not need to be given greater weight than non-examining physicians.  Id. at 830-34.  Therefore, ING's reliance on non-examining physicians was not arbitrary or capricious.

4.   "Disabled" Standard

Mead argues that ING used the wrong standard in determining whether she was eligible for benefits.  ING rejected her disability claim because it felt she was not disabled from performing her own occupational duties.  Mead claims ING did not correctly judge her against the standard of her "own" occupation but against a generic "sedentary" occupation.  Using a standard inconsistent with the plain words of the plan is arbitrary and capricious.  Pulvers v. First UNUM Life Ins., 210 F.3d 89, 93 (2d Cir. 2000).  Using the standard of a claimant's own occupation must take into

account the claimant's true job duties.  Robbins v. Aetna
Life Ins., No. 03-CV-5792, 2006 WL 2589359, at *8 (E.D.N.Y.
September 08, 2006).  Therefore, use of an incorrect job
description is considered arbitrary and capricious.  Id.

Mead has presented evidence that ING did not consider
her correct job description.  In a letter to Dr. Yarosh
during the appeal process, ING stated that "No Job
Description is available for [Mead's] specific title."  ING,
in its various correspondence, repeatedly described Mead's
job in the generalities of "sedentary" and "executive".  The
fact that ING has admitted not having a job description for
Mead gives rise to a reasonable inference that it did not
use the correct standard for Mead's job.  However, as ING
has discretion to interpret the terms of the policy, if the
terms "sedentary" and "executive" reasonably describe Mead's
position, and the tasks that position entailed, it has
committed no error.  But, whether ING used an accurate
description of Mead's job is disputed and therefore the
Court cannot say that ING's decision in interpreting Mead's
job description was not arbitrary and capricious.

16

5.  Lack of Reasoning

Mead claims that ING did not explain its reasoning behind its decision and summarily dismissed the medical evidence from her examining physicians.  Under ERISA, Plan administrators are required to clearly communicate the "specific reasons" for benefits denials. Nord, 538 U.S. at 825 (citing 29 U.S.C. § 1133). Without knowing the specific reasoning behind a denial, a claimant is at a significant disadvantage in contesting the denial.  Doyle v. Nationwide Ins. Cos. & Affiliates Employee Health Care Plan, 240 F. Supp. 2d 328, 345 (E.D. Pa. 2003).  Specific reasoning must be given to the claimant so that the Court can exercise an informed and meaningful review.  Skretvedt v. E.I. DuPont de Nemours & Co., 268 F.3d 167, 177 n.8 (3rd Cir. 2001).

ING's initial denial letter begins by listing all the available medical evidence.  After listing the medical evidence the letter concludes:  "As your medical records do not support total disability from your own occupation as a M/C IV Communications/Community Relations Executive, your claim from Long Term Disability benefits has been denied." ING's appeal denial letter lists new medical evidence and concludes that the new evidence supports the initial denial.

The appeal letter discusses its findings on Mead's limitations and abilities and concludes that they would allow Mead to perform sedentary work.

Both letters supply insufficient specific reasons for denial.  The explanation of specific reasons must go beyond merely restating the plan's general eligibility criteria. Flinders v. Workforce Stabilization Plan of Phillips Petroleum Co., 491 F.3d 1180, 1192 (10th Cir. 2007); see also Skretvedt, 268 F.3d at 177 n. 8 (criticizing a denial letter that merely restated the requirements of a benefit plan and then stated summarily that a claimant failed to meet them).  Bald-faced conclusions do not satisfy the requirement of specific reasons for the decision. Richardson v. Cent. States, Se. & Sw. Areas Pension Fund; 645 F.2d 660, 665 (8th Cir. 1981).  The initial letter contains nothing more than a bald-faced conclusion, it does not explain what Mead's abilities and limitations are and how they allow Mead to perform her job tasks.  While lengthy reasoning is not required, ING must explain to Mead how the medical opinions and other evidence relate to her ability to do her job.  Neither letter discusses Mead's job tasks beyond describing her job as sedentary.  Mead claims that

18

her job entailed frequent air travel and up to 8 hours of meetings per day.  ING on the other hand has stated at points that it has no job description for Mead.  It is unclear from the denial letters what job description ING used to determine disability.

Without a clearer explanation of ING's reasoning, Mead could not know what ING felt she was capable of and Mead would be unable to dispute their findings or their view of her job tasks.  The Court is also unable to perform an informed and meaningful review without knowing what Mead's job entailed.  This absence of reasoning is unfair to Mead, prohibits proper review, and therefore rises to the level of an arbitrary and capricious denial of benefits.

6.  Full and Fair Review

Finally, Mead alleges that she was denied full and fair review of her claim, because she was not given an opportunity to respond to the opinions of the doctors consulted during the appeals process.  Claimants are entitled to a full and fair review of the denial of their claim.  29 U.S.C. § 1133(2).  The relevant section of ERISA reads:

[E]very employee benefit plan shall-

19

...

(2) afford a reasonable opportunity to any
participant whose claim for benefits has been denied
for a full and fair review by the appropriate named
fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

While the Second Circuit has not delineated its own
requirements for full and fair review, it has expressed
approval of the test set forth in Grossmuller v. Int'l
Union, United Auto. Aerospace & Agric. Implement Workers of
Am., U.A.W., Local 813, 715 F.2d 853 (3d Cir. 1983). See
Crocco v. Xerox Corp., 137 F.3d 105, 108 (2d Cir.
1998)(affirming the district court's judgment, based on
Grossmuller, that "full and fair review" was not provided).
For a full and fair review the claimant must be presented
with all relevant evidence and must be afforded an
opportunity to respond to that evidence. Grossmuller, 715
F.2d at 857-58. Failure to provide full and fair review
results in an arbitrary and capricious denial. Crocco, 137
F.3d at 108.

Here, Mead was never told about or given the report of
Dr. Nudelman until after the final decision had been made.
The report was referred to extensively in the appeal denial
letter. The report contained the medical opinions of a

20

Rheumatologist and Occupational Medicine Specialist who had reviewed Mead's medical records.  Both doctors felt that there was not enough evidence to conclude that Mead was disabled.  The Rheumatologist pointed to Mead's rehabilitation exercise program as evidence of her ability to preform her former job.  The report did not indicate the identity of either doctor.  The issue is whether receiving this report only after the final denial deprived Mead of full and fair review of her claim.

The Third Circuit in Grossmuller reviewed the denial of benefits to a claimant under a disability benefits plan. Grossmuller, 715 F.2d at 855.  The claimant was collecting disability benefits but needed to refrain from engaging in regular employment to continue benefits.  Id.  A private detective, hired by the plan administrator, reported that the claimant was working as a bartender.  Id.  The local review board decided to terminate the claimant's benefits based on this evidence, without ever appraising the claimant of the evidence against him.  Id.  The claimant appealed the termination but the denial was affirmed without the plaintiff being allowed to appear before the appeal board. Id. at 856.  The Third Circuit declared that to provide full

21

and fair review the plan must "inform the participant of
what evidence is relied upon and provide him with an
opportunity to examine that evidence and to submit written
comments or rebuttal documentary evidence." Id. at 858.
The court held that the "persistent core requirements of
review intended to be full and fair include knowing what
evidence the decision-maker relied upon, having an
opportunity to address the accuracy and reliability of that
evidence, and having the decision-maker consider the
evidence presented by both parties prior to reaching and
rendering his decision." Id. at 858, n.5.  The fiduciary
had fallen short of full and fair review in many ways,
including failing to inform the claimant of the evidence on
which he was denied benefits and not giving him an
opportunity to submit written comments or rebuttal
documentary evidence.  Id. at 858.  The court therefore held
that the benefits procedure had failed to comply with ERISA
and remanded the case to the plan administrators to resolve.
Id. at 859.

Here, as in Grossmuller, the claimant was denied
benefits based on evidence that claimant never saw and had
no chance to rebut.  Mead was not informed of Dr. Nudelman's

report until after the final affirmation of her denial and was given no opportunity to challenge the report.

Since Grossmuller, other circuit and district courts have adopted its reasoning.  In a case that closely mirrors this one, Abram v. Cargill, Inc., 395 F.3d 882 (8th Cir. 2005), a claimant was denied LTD benefits based on a medical opinion letter sent to the appeals committee.  Abram, 395 F.3d at 885.  The claimant was never informed of the opinion letter until after final denial of her claim.  The court held that claimant was denied the opportunity to respond and therefore denied full and fair review.  Id. at 886.  The court remanded the claim to the plan administrator, referring to the procedure as "gamesmanship," catching the claimant completely off guard.  Id.; see also Lammers v. American Express Long Term Disability Benefit Plan, 2007 WL 2247594, No. 06-cv-1009 (D. Minn. Aug. 2, 2007) (reversing and remanding a claim denial based on medical reports not given to the claimant); Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955 (9th Cir. 2006) (holding that even without new evidence hidden from the claimant, changing the grounds on which benefits are denied without opportunity to respond is a denial of full and fair review).

In <u>Crocco v. Xerox Corp.</u>, 956 F. Supp. 129 (D. Conn. 1997), the fiduciary, reviewing an initial denial of benefits, looked only at the procedure used below and not the basis for the decision.  The fiduciary affirmed the denial without taking any evidence or giving the claimant any opportunity to present arguments.  The court analyzed the fiduciary's procedure under <u>Grossmuller</u> and found that a full and fair review had not been afforded the claimant.  On appeal the Second Circuit adopted the district court's reasoning and affirmed the finding of failure to give a full and fair review.  <u>Crocco</u>, 137 F.3d at 108.

Of the other courts of appeal, only the Tenth Circuit has disagreed with <u>Grossmuller</u>.  In <u>Metzger v. Unum Life Ins. Co. Of Am.</u>, 476 F.3d 1161 (10th Cir. 2007), the court affirmed the denial of benefits to a claimant even though the review board relied on a medical report that claimant did not see until after the final denial. The court found that the report contained no new factual information and the denial was based on the same grounds as the initial denial. The court felt that requiring the administrators to present the claimant with every new analysis of the facts would cause an endless cycle of evidence production.  Because the

reports contained no new "factual" information, but merely an analysis of known evidence, the court upheld the denial.

The procedure used here is distinguishable from Metzger.  While Dr. Nudelman's report may be seen as a summary of existing evidence, it is also a summary of unknown doctors' opinions that were not included earlier. With new doctors' opinions being relied upon, there are new factual questions such as the credibility of those doctors' opinions.  The report here contains information that Mead was unaware of prior to the denial, and therefore, unlike in Metzger, Mead was denied full and fair review.

The procedure in this case left no opportunity to respond to the Nudelman report.  The prejudice from that denial is evident from the undisputed facts.  The report was referred to and relied upon in making the decision to confirm Mead's denial.  Mead has raised numerous issues with the Nudelman report that should have been discussed by the appeals board.  The report relies upon the opinions of two doctors who have never been identified.  It is unclear what medical evidence they relied upon and what expertise they have.  Neither of these concerns were addressed below because Mead had no opportunity to raise them.

While the Nudelman report contains the same conclusion as previous medical reports, this does not undermine its relevance.  The Nudelman report was discussed in the denial letter more than any other report.  It was considered without opportunity to challenge and could have affected the outcome.  The Court cannot judge whether it would have changed the outcome of the appeal because it is unknown how Mead would have responded to it had she had the opportunity.

ING argues that the underlying reasons for denial were made known to Mead before the final decision and therefore she was not deprived an opportunity to respond.  Knowing the reason for denial is only part of what is needed for a claimant to respond.  Without knowledge of the underlying evidence, one cannot truly respond.

ReliaStar also claims that the reports only needed to be available to Mead "upon request", and to hold otherwise would go against the Department of Labor regulations.  See 29 C.F.R. 2560.503-1(h)(2)(iii).  But this is inconsistent with the idea of a reasonable opportunity to respond.  The claimant must know of the existence of evidence to be able to request it.  Mead could not request a report that she did not know existed.

26

ReliaStar argues that this cannot be what the law requires because it would cause an endless cycle of medical opinions and reports.  This is not the case because there is no requirement that the fiduciary produce more evidence or reasoning to respond to the claimant's response.  Even in the face of new evidence from a claimant, the plan may still find that the previous evidence is more persuasive and deny the claim for the original reasoning.  Then the claimant has had the opportunity to respond to the evidence and reasoning, even if the response was not successful.  A claimant need only be given one opportunity to respond to the reports relied on by the fiduciary.

D.  Remedy

Mead requests that the Court award her the disability benefits that she claims.  While ING acted arbitrarily and capriciously in its denial, this does not automatically entitle Mead to benefits.  The Court must remand the case back to ING for further proceedings unless there is no way ING could produce a reasonable conclusion denying the claim or if remand would otherwise be a useless formality.  Miller v. United Welfare Fund, 72 F.3d 1066, 1071 (2d. Cir 1995) ("[I]f upon review a district court concludes that the

27

Trustees' decision was arbitrary and capricious, it must remand to the Trustees with instructions to consider additional evidence unless no new evidence could produce a reasonable conclusion permitting denial of the claim or remand would otherwise be a 'useless formality.'"); see also Demirovic, 467 F.3d at 216 ("This record cannot pass muster even under the deferential arbitrary and capricious standard of review, and so we remand the case to allow the Fund to give further consideration to Demirovic's claim of disability."); Crocco, 137 F.3d at 109 ("[T]he Plan administrator's approval of the partial denial of Crocco's claim was arbitrary and capricious, and hence ... a remand for a "full and fair review" is required."). "[R]emand of an ERISA action seeking benefits is inappropriate 'where the difficulty is not that the administrative record was incomplete but that a denial of benefits based on the record was unreasonable.'"  Zervos v. Verizon New York, Inc., 277 F.3d 635, 648 (2d Cir. 2002).

The difficulty here is an incomplete administrative record.  ING's record is incomplete because it lacks an explanation of its reasoning and it does not include Mead's response to Dr. Nudelman's report, due to the failure to

provide full and fair review.  The Court cannot review the merits of the claim until the reasoning behind the denial is known and Mead receives an opportunity to respond to it.

Based on the evidence, ING could produce a reasonable conclusion denying Mead benefits.  The medical opinions do not give a clear conclusion either way, and both sides have support.  Dr. Rabin held the opinion that Mead could stay seated 3-4 hours at a time and Mead has been able to exercise regularly.  While this does not definitively indicate that Mead could perform her job tasks, more information on her specific tasks could lead to a finding of no disability.  Limited hours of sitting may be enough to perform Mead's tasks but the Court cannot decide this based on the record here.

## Conclusion

For the reasons set forth above, I recommend that ING's motion for summary judgment be DENIED and that Mead's motion be GRANTED and her claim be remanded to ING.

Dated at Burlington, in the District of Vermont, this 29th day of January, 2008.

/s/ Jerome J. Niedermeier
Jerome J. Niedermeier
United States Magistrate Judge


Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  Failure to file objections within the specified time waives the right to appeal the District Court's order. See Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(e).

30