```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                        DISTRICT OF VERMONT

SUSAN MEAD,                           :
                                      :
        Plaintiff,                    :
                                      :
        v.                             :    Case No. 2:05-cv-332
                                      :
RELIASTAR LIFE INSURANCE COMPANY,     :
                                      :
        Defendant.                    :
                                      :
```

                         MEMORANDUM AND ORDER

     In this ERISA action challenging the denial of long-term disability benefits, the Magistrate Judge issued his Report and Recommendation on January 29, 2008, recommending that the Defendant's motion for summary judgment be denied, the Plaintiff's motion for summary judgment be granted, and the case remanded to the plan administrator for further proceedings.  Both parties filed timely objections to the Report and Recommendation.

     Pursuant to 28 U.S.C. § 636(b), a district court makes a de novo determination of those portions of the report or recommendations to which objection is made.  The court may accept, reject, or modify, in whole or in part, the magistrate judge's recommendations, or it may recommit the matter to the magistrate judge with instructions.  28 U.S.C. § 636(b)(1)(C).

     After de novo review of the record and the submissions of the parties, the recommendation to deny the Defendant's motion for summary judgment is accepted.  The recommendation to grant the Plaintiff's motion for summary judgment is modified, and the

Plaintiff's motion for summary judgment is granted in part.  The case is remanded to the plan administrator for further proceedings consistent with this opinion.

**I.    Plaintiff's Objections**

The Plaintiff objected to remand, and sought entry instead of the monetary judgment requested, based on the evidence contained in the claim record.  She also claimed that review of her claim should have been de novo rather than subject to the arbitrary and capricious standard.

**II.   Defendant's Objections**

The Defendant objected to four rulings made by the Magistrate Judge: 1) failure to affirm the denial of long-term disability benefits; 2) the conclusion that the record failed to demonstrate that ING used a correct description for Mead's job; 3) the conclusion that the denial of long-term disability benefits was arbitrary and capricious because the initial denial and the denial of Mead's appeal did not supply sufficiently specific reasons for the decision; and 4) the conclusion that Mead did not receive a full and fair review of her claim because she was not provided with the independent medical reviewer's report until some time after the final decision was made on her appeal.

The Defendant also argued that the Magistrate Judge failed to address its arguments that Mead failed to claim disability

within one year of the onset of the disability; that she failed to meet the definition of total disability because she was able to work part-time; and that she failed to seek treatment for her condition.  None of these rationales for denying long-term disability benefits appears to have constituted a factor in the initial denial or the denial of the appeal.  If, as Defendant argues, the arbitrary and capricious standard of review applies to the denial of benefits to Mead, then the Court must limit its review to the reasons for the denial that are apparent from the administrative record.  *See Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995).[1]

### III. <u>Standard of Review</u>

A denial of benefits is reviewed de novo "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989); *accord Krauss v. Oxford Health Plans, Inc.*, ___ F.3d

---

[1]  The Defendant also objected to two findings as incomplete. Although in context the imprecision is immaterial, the Court finds that Mead's long-term disability plan provided for a monthly income benefit of the lesser of 40% of her basic monthly earnings, or $15,000 minus "other income."  (MEAD 12.)  The Court also finds that the plan's definition of "total disability" has two components: 1) until you have qualified for monthly income benefits for 24 months, you are unable to do the essential duties of your own occupation, due to sickness or accidental injury; and 2) after you have qualified for monthly income benefits for 24 months, you are unable to work at any occupation you are or could reasonably become qualified to do by education, training or experience.  (MEAD 23.)

\_\_\_, \_\_\_, No. 06-0343-cv, 2008 WL 495654 (2d Cir. Feb. 26, 2008). Arbitrary and capricious review is appropriate in this case, for essentially the reasons stated in the Magistrate Judge's Report and Recommendation.

Under the arbitrary and capricious standard of review, a denial of benefits may be overturned "'only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Demirovic v. Bldg. Serv. 32 B-J Pension Fund*, 467 F.3d 208, 212 (2d Cir. 2006) (quoting *Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 92 (2d Cir. 2000)). For the reasons that follow, the Court concludes that the denial of benefits for the reasons given was arbitrary and capricious. Remand, however, is required because it is possible that a proper review of claimant's case "could produce a reasonable conclusion permitting denial of the claim." *Miller*, 72 F.3d at 1071.

**IV.   Mead's Job Description**

At the time she ceased working for ReliaStar Financial Corp.,[2] Mead held an executive position. The parties dispute her job title, Mead claiming that she was vice president for brand development and strategic planning, ING claiming that she was an M/C V1, Communications/Community Relations in Strategic Marketing. The parties agree however that the job qualified as a

---

[2]   ING Groep N.V. acquired ReliaStar Financial Corp. in 2000.

sedentary position, that included the responsibilities to

> [d]evelop and execute an integrated strategy for communicating enterprise strategies, plans, objectives, programs, activities, and announcements to various internal and external audiences; [d]esign[] and implement[] public relations and advertising programs to enhance the company's image and identity within the industry and community; and [s]elect[], train[], motivate[] and direct[] staff to accomplish the objectives of the various communications/community relations programs.

(MEAD 349.)  The parties acknowledged that the job was a flexible one, with the opportunity to change her position and stand up for brief periods during her day, although the majority of each day was spent seated in meetings.  Mead stressed that her position also required extensive and lengthy air travel.[3]

ING's objection that Mead did not dispute that she was an executive with a sedentary job is therefore well taken.  The dispute actually concerns the physical requirements of her sedentary job, and the record does not demonstrate whether the plan administrator used a generally accepted definition of sedentary or any definition whatsoever.[4]

---

[3] ING terms it "absurd" to evaluate Mead's physical condition in terms of her ability to perform her occupation, given that she left her job with ReliaStar on December 31, 2000, and applied for disability benefits two years later, on January 28, 2003, when she had not been working in the interim.  The Court declines to so characterize this process, given that the plan administrator chose to evaluate Mead's claim in this fashion.

[4] A generally recognized standard for sedentary work "'involves up to *two hours of standing or walking* and *six hours of sitting* in an eight-hour work day.'" *Connors v. Conn. Gen. Life Ins. Co.*, 272 F.3d 127, 136 n.5 (2d Cir. 2001) (quoting *Curry v. Apfel*, 209

The initial denial letter dated August 28, 2003 described Mead's physician's assessment on February 20, 2003 that she could sit for three to four hours a day, stand for one to two hours a day, and walk for one to two hours a day.  In April 2003 the doctor reported to ING's medical consultant that there was no deterioration in her condition, and that she is better when she does not sit.  From this information ING concluded that "[t]he restrictions that Dr. Rabin indicated on February 20, 2003 would not impair you from performing your sedentary job.  Our medical consultant feels there is no objective reason why you cannot return to work."  (MEAD 252.)

The appeal denial, dated August 13, 2004, described Mead's occupation, as a Vice President of Marketing, as sedentary.  The appeal committee, noting that Mead's Functional Capacity Evaluation ("FCE") mentioned that she was best suited for employment that would allow her to alternate sitting and standing positions, determined that her sedentary job was flexible enough so that she could alternate sitting and standing at will.  It appeared to ignore the FCE's related determination that "Mead has a very limited sitting tolerance," and that "her stamina for reliable, consistent work tasks would only allow her to perform gainful work activities in a consistent, reliable manner for 4 hours per day, 3-5 days per week."  (MEAD 209.)

---

F.3d 117, 123 (2d Cir. 2000) (emphasis in original)).

That the disability policy grants ReliaStar Life final discretionary authority to determine all questions of eligibility (MEAD 25) does not mean that it may avoid providing a definition of terms or an explanation of its reasoning, or that it may appear to contradict itself. *See Pulvers v. First UNUM Life Ins. Co.*, 210 F.3d 89, 93 (2d Cir. 2000) (imposing a standard not required by the plan or interpreting it inconsistently may be arbitrary and capricious); *Miller*, 72 F.3d at 1072 (deferential review requires consideration of "'whether the decision was based on a consideration of the relevant factors.'") (quoting *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.*, 46 F.3d 1264, 1271 (2d Cir. 1995)).

The initial denial letter appears to credit Dr. Rabin's assessment that Mead is limited to sitting for three to four hours a day. It does not explain how that restriction does not impair Mead from working full-time at a sedentary job. The appeal denial appears to credit the FCE's assessment that Mead cannot sit for extended periods of time, but cites unspecified "flexibility" in her occupation as enabling her to alternate sitting and standing at will.

The Magistrate Judge's conclusion that the record did not permit him to determine whether ING had used an accurate description of Mead's occupation, and therefore that he could not say that ING's decision was not arbitrary and capricious (R&R 16)

is, accordingly, modified.  The Court is unable to conclude from the record whether ING rejected the findings that Mead cannot perform full-time sedentary work, or whether, and on what basis, it concluded that Mead enjoyed a particular type of sedentary occupation that afforded her the flexibility to sit only for limited periods of time.

**V.    Lack of Reasoning**

Under ERISA, a plan participant whose claim for benefits has been denied must be given notice "setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant."  29 U.S.C. § 1133.  Department of Labor regulations require this notice to include, inter alia: "[t]he specific reason or reasons for the adverse determination;" "[r]eference to the specific plan provisions on which the determination is based;" and "[a] description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary."  29 C.F.R. § 2560.503-1(g)(1)(i)-(iii).

The initial denial letter informed Mead that her claim was denied because

> The restrictions that Dr. Rabin indicated on February
> 20, 2003 would not impair you from performing your
> sedentary job.  Our medical consultant feels that there
> is no objective reason why you cannot return to work
> and that you yourself raised the issue of returning to
> work on at least one occasion.  Dr. Rabin feels that
> your mental health issues are in [sic] integral part of
> your polysomatism, including multiple pain complaints

>     and that [sic] are the true reasons why you are not
>     motivated to return to work and why you perceive
>     yourself as unable to return to work.
>         Your psychiatrist, Dr. Mark Schultz, reports in a
>     letter dated April 28, 2003, that you are not disabled
>     from a psychological standpoint.
>         As your medical records do not support total
>     disability from your own occupation as a M/C IV
>     Communications/Community Relations Executive, your
>     claim for Long Term Disability benefits has been
>     denied.

(MEAD 252-53.)[5]

The initial letter thus appears to provide two grounds for denial. The first is that ING's medical consultant felt that Mead had no objective evidence to support her claim of disabling pain. The second is that Mead's medical records themselves do not support her claim of total disability from her sedentary occupation. This gave reasonably adequate notice under § 1133 of the reasons for the adverse determination, as evidenced by Mead's appeal memorandum, which addressed these issues.

The appeal denial confirmed that the initial denial was based on a determination "that the medical evidence on file at the time of the decision did not support that Ms. Mead's medical

---

[5]  It appears that a conversation between Dr. Rabin, Mead's treating physician, and ING's medical consultant was misinterpreted to suggest that the treating physician felt that Mead was capable of working full-time and that "mental health issues" infected her complaints of pain. The treating physician supplied a written statement accompanying Mead's appeal that protested this misconstruction and stated "Susan Mead is clearly incapable of performing a sedentary job given her multiple areas of pain," and "[i]t is my opinion that mental health issues are not the cause of Ms. Mead's multiple pain complaints." (MEAD 208.)

conditions were severe enough to preclude her from performing her sedentary occupation as a Vice President of Marketing." (MEAD 54.) It stated that upon review "[b]ased upon the medical evidence on file and the conclusions of the independent reviewing physician, the Appeal Committee was unable to conclude that Ms. Mead was 'totally disabled' from performing her occupational duties commencing January 28, 2003 and for a continuous period of 6 months and greater in order to qualify for benefits." (MEAD 56.) The appeal denial also gave reasonably adequate notice under § 1133 of the reasons for denying Mead's claim.

Nonetheless, the claims decisions do not withstand arbitrary and capricious review, because it is impossible to tell what evidence was credited and what evidence rejected in order to arrive at the decision to deny long-term disability benefits. There is no dispute that Mead has a documented history of multilevel cervical disc degeneration, and that she has undergone a variety of treatments over the years to obtain relief from chronic pain. It appears that the plan administrator credited Mead's treating physician's statement of impairment and function that indicated she was limited to sitting for three to four hours, standing for one to two hours and walking for one to two hours. As noted earlier, there is no evidence on record to support the notion that Mead's full-time occupation afforded her the flexibility to "alternate sitting and standing at will" for

less than a full eight-hour day.

It appears that the appeal committee may have attached significance to the fact that Mead's condition did not appear to have appreciably deteriorated between December 2000 when she was working and January 2003 when she claimed disability. (MEAD 55.) As Judge Posner commented in *Hawkins v. First Union Corp. Long-Term Disability Plan*, 326 F.3d 914, 918 (7th Cir. 2003), this is a "bad argument." There is no "logical incompatibility between working full time and being disabled from working full time[;] . . . [a] disabled person should not be punished for heroic efforts to work by being held to have forfeited his entitlement to disability benefits should he stop working." *See also Denmark v. Liberty Life Assur. Co. of Boston*, 481 F.3d 16, 36 n.17 (1st Cir. 2007). The Court is unable to conclude from the record whether this "bad argument" influenced the appeal committee's decision, or whether specific facts in this case indicated that Mead was healthy in December 2000.

The initial reviewer and the appeal committee also attached significance to the fact that Mead performed volunteer work and engaged in an exercise regimen "indicative of a rather high stamina and high level of physical ability." (MEAD 55.) The committee felt "this would not be consistent with an individual who is incapable of sedentary work activity and would not be consistent with an individual who has complaints of pain, which

are at a disabling level." (*Id.*) It appears therefore that ING may have found that Mead's and her physicians' reports of disabling pain lacked credibility. Although ING was not required to believe Mead and her physicians, subjective descriptions of pain, if credible, are sufficient evidence of disability. *See Krizek v. Cigna Group Ins.*, 345 F.3d 91, 101-02 (2d Cir. 2003); *see also Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003) ("Plan administrators, of course, may not arbitrarily refuse to credit a claimant's reliable evidence, including the opinions of a treating physician.").

If, however, ING merely assumed that an individual doing part-time volunteer work or maintaining a daily regimen of physical therapy including yoga, aerobics and strength training was capable of sedentary work, the conclusion lacks any record evidence to support it. There is no evidence that Mead's sedentary job required physical ability or stamina. There is likewise no evidence that her exercise regimen or her volunteer work resembles the occupational duties of Mead's former job. And there is no evidence that Mead exercises or works without substantial reliance on pain medication that may interfere with her ability to perform the duties of her executive level occupation. *See id.* (permissible inferences require evidentiary basis in the record; claimant's report of disabling pain and fatigue was not undermined by her ability to do part-time

volunteer work).

Thus, the Magistrate Judge's conclusion that ING did not adequately explain its decision to deny Mead long-term disability benefits is modified to make clear that, although ING's denials set forth specific reasons as required by 29 U.S.C. § 1133, the Court is unable to conclude that those reasons were supported by substantial evidence.

### VI.  **Full and Fair Review**

ERISA requires that "every employee benefit plan shall -- . . . (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."  29 U.S.C. § 1133(2).  "'The purpose of [the full and fair review] requirement is to provide claimants with enough information to prepare adequately for further administrative review or an appeal to the federal courts.'"  *Juliano v. Health Maint. Org. of N.J., Inc.*, 221 F.3d 279, 287 (2d Cir. 2000) (quoting *DuMond v. Centex Corp.*, 172 F.3d 618, 622 (8th Cir. 1999)).  "Full and fair review" requires a claims procedure to "provide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits."  29 C.F.R. § 2560.503-1(h)(2)(iii).  "Full and fair review" of an adverse benefit determination on review also

includes the requirement that "the plan administrator shall provide such access to, and copies of, documents, records, and other information" relevant to the claim.  29 C.F.R. § 2560.503-1(i)(5).

The parties dispute whether access to documents includes access to the report of its independent medical reviewer prior to the final decision on appeal.  There is conflicting authority on this point.  *Compare Metzger v. UNUM Life Ins. Co. of Am.*, 476 F.3d 1161, 1167 (10th Cir. 2007) (plan administrator was not required to provide claimant with access to appeal-level medical reviewers' reports prior to final decision on appeal), *with Abram v. Cargill, Inc.*, 395 F.3d 882, 886 (8th Cir. 2005) (obtaining second medical review after appeal deadline had passed and providing it to claimant only after final denial decision issued was inconsistent with full and fair review).

It is unnecessary to resolve this conflict in this case, because in any event the record reflects that Mead was informed in a letter to her attorney dated June 20, 2004 that before her appeal would be decided her records were to be reviewed by an outside medical consultant, and that a decision would issue no later than August 22, 2004.  (MEAD 96.)  Mead made no request for any reports or documents generated during the appeal process prior to the appeal committee's August 2004 decision.

Accordingly, the Court does not adopt the Magistrate Judge's

conclusion that Mead did not receive a full and fair review of her claim because she did not receive an opportunity to respond to the report of the independent medical reviewer.  Mead knew that such a report was going to be generated, and knew of her right to request copies of relevant documents, and failed to request a copy of the report prior to the determination of her appeal.

**VII. Conclusion**

The Report and Recommendation of the Magistrate Judge (Doc. 48) is accepted in part, modified in part and rejected in part. The Defendant's motion for summary judgment (Doc. 24) is denied. The Plaintiff's motion for summary judgment (Doc. 20) is granted in part.  Because the Court is unable to conclude from the record that ING's denial of long-term disability benefits was supported by substantial evidence, but it is possible that a proper review could produce a denial that is adequately supported, the case is remanded to the plan administrator.

Dated at Burlington, in the District of Vermont, this 27th day of March, 2008.

> /s/ William K. Sessions III
> William K. Sessions III
> Chief Judge
> U.S. District Court